IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LENA K. | : | CIVIL ACTION |
| v. | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | NO. 25-692 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                      October 22, 2025

Lena K. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has replied. For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded to the Commissioner.

I.     PROCEDURAL HISTORY[1]

On March 1, 2022, Plaintiff applied for DIB, alleging that disability commenced on May 20, 2021.[2] R. 17. The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing. Id. On March 7, 2024, Plaintiff appeared for a telephonic hearing, before Sandra Morales Price, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and Patricia Scutt, a vocational expert, ("the VE") testified at the hearing. Id. On May

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record. ("R.").

[2] At the administrative hearing, Plaintiff amended her alleged onset date to March 1, 2022. R. 44.

20, 2024, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision. R. 17-33. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on December 17, 2024, making the ALJ's findings the final determination of the Commissioner. R. 1-3. Plaintiff now seeks judicial review, and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   <u>Personal History</u>

Plaintiff, born on April 20, 1966, R. 41, was 58 years old on the date of the ALJ's decision. She lives with her 80-year-old husband. R. 46. Plaintiff stopped working as a bus driver, because she was shot at while driving and witnessed a murder; these events resulted in post-traumatic stress disorder ("PTSD"). R. 47.

B.   <u>Plaintiff's Testimony</u>

At the March 7, 2024 administrative hearing, Plaintiff testified that she could not work,

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

because of PTSD, migraine headaches, constant knee pain, and tinnitus; she explained that PTSD caused panic attacks, anxiety, depression, irritability, and fear of strangers. R. 48-49, 62. Plaintiff sleeps, intermittently, for a total of four to five hours each night, due to nightmares that result from her PTSD. R. 49, 59. She suffers migraine headaches approximately four times a week, which cause her to lie in bed all day. R. 56, 60.

Plaintiff is able to lift no more than a six pack of soda, sit for approximately 30 minutes, stand for approximately 15 minutes, and walk for about half a block. R. 57. She has poor grip strength in her dominant right hand, due to being bitten multiple times by a dog in 2015. R. 58-59. On days when Plaintiff does not have debilitating migraine headaches, she will perform some household chores, such as vacuuming. R. 60.

C.     Vocational Testimony

The VE characterized Plaintiff's past school bus driver job as medium [4] semi-skilled[5] work; the skills acquired in this job do not transfer to any other work. R. 64. The ALJ then asked the VE to consider the following hypothetical individual: the same age, education and work experience as Plaintiff; able to perform medium work; unable to crawl, climb ladders, ropes or scaffolds; occasionally able to perform other postural activities; unable to be exposed to unprotected heights; occasionally able to be exposed to moving machinery and vibration; able to tolerate no more than moderate noise; able to understand, remember and carry out simple instructions; able to make simple, work-related decisions; and able to tolerate frequent interaction with the public, supervisors and co-workers. R. 64. The VE opined that this person could not

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).
[5] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

perform Plaintiff's past job but could perform three, unskilled[6] jobs: (1) laboratory cleaner, 46,400 positions in the national economy; (2) egg packer, 35,052 positions in the national economy; and (3) linen room attendant, 59,700 positions in the national economy. R. 65. The ALJ then asked the VE to consider the same individual but with added restrictions: unable to kneel; unable to tolerate any moving machinery or vibration; able to tolerate occasional contact with the public; and able to tolerate occasional changes in the work setting. R. 65. The VE opined that this person could perform the same three jobs, with the same number of jobs available. R. 65. Next, if the individual in the second hypothetical functioned off-task 15 minutes each hour, she could not maintain employment. R. 66. Likewise, if that person missed two days of work each month, she could not maintain employment. R. 66.

Plaintiff's attorney asked the VE to consider the same individual as in the first hypothetical, who was limited to sitting, standing or walking for a maximum of four hours each at a time. R. 67. The VE opined that this person could still perform the laboratory cleaner and egg packer jobs, because they allow for a sit-stand option. R. 67. If the individual in the first hypothetical could tolerate less than occasional interaction with the public, supervisors and co-workers, she would be unemployable, because more supervision is required to perform even unskilled work. R. 67.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.

2. [Plaintiff] not engaged in substantial gainful activity since March 1, 2022, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

---

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

3. [Plaintiff] has the following severe impairments: left knee joint disorder, migraine, obesity, depression, anxiety and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that, [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can never crawl or climb ladders, ropes and scaffolds and can occasionally do the rest of the postural activities. She can have no exposure to unprotected heights, and occasional exposure to moving machinery or vibrations. She can tolerate no more than moderate noise. [Plaintiff] can understand, remember, and carry out simple instructions. She can use judgment to make simple work-related decisions. She can have frequent contact with the public, supervisors, and coworkers.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on April 20, 1966 and was 55 years old, which is defined as an individual of advanced age, on the amended alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not [Plaintiff] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).

11. [Plaintiff] has not been under a disability, as defined in the

>     Social Security Act, from March 1, 2022, through the date
>     of this decision (20 CFR 404.1520(g)).

R. 19-21, 24, 32-33.

## IV.    DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.   Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could not perform her past relevant work but could perform other medium, unskilled jobs that exist in the national economy and, hence, was not disabled. R. 17-33. Plaintiff disputes the ALJ's non-disability determination and argues that the ALJ failed to: (1) weigh properly certain May 3, 2023 opinions of consultative psychological examiner Gregory Coleman, Psy. D.; (2) identify substantial evidence to support her mental residual functional capacity ("RFC") determination; and (3) assess properly her migraine headaches at step three of the sequential evaluation process ("SEP"). Pl. Br. at 8-18. The Commissioner denies Plaintiff's assertions of error. Resp. at 1-9.

7

This court finds that Plaintiff's argument concerning her migraine headaches has merit.[7]

    1. <u>The ALJ's SEP Step Three Analysis</u>

Plaintiff argues that the ALJ failed to comply with her duty, under Social Security Ruling ("SSR") 19-4p, to analyze whether she medically equaled a listed impairment. Pl. Br. at 14-18. This court finds that the ALJ failed to comply with SSR 19-4p.

The ruling concerns how the Commissioner evaluates primary headache disorders; migraines are one type of such disorders. SSR 19-4p, 2019 WL 4169635, *2. There is no listed impairment for any primary headache disorder. *Id.* at *7. If a claimant has a severe primary headache disorder, as Plaintiff does, at SEP step three, an ALJ is required to consider whether the primary headache disorder, alone or in combination with the claimant's other impairments, medically equals a listing. *Id.* The Commissioner has instructed that, for primary headache disorders, including migraines, the most closely analogous listed impairment is the one for Epilepsy, Listed Impairment 11.02B and 11.02D. *Id.* The Commissioner then provides the following instructions for evaluating medical equivalence to each listing:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

---

[7] The court has reordered Plaintiff's arguments so that they are consistent with the steps of the SEP.

> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p, 2019 WL 4169635, *7.

The ALJ's entire treatment of the question of medical equivalence for Plaintiff's migraines consisted of the following two sentences:

> With regard to section 11.02, [Plaintiff's] migraine has not been of sufficient severity to medically equal listing 11.02 or any other listing (Exhibits B6F, B16F). I have considered SSR 19-4p in conjunction with [Plaintiff's] migraines.

R. 21. It is clear that the ALJ failed to provide the required, detailed explanation for her conclusion that Plaintiff's migraines did not medically equal the listed impairment the Commissioner identified as most closely analogous. Hence, this case must be remanded so that the ALJ can explain properly, with reference to the guidance set forth in SSR 19-4p, whether or not Plaintiff's migraines medically equal Listed Impairment 11.02B or 11.02D.[8]

2. <u>Dr. Coleman's Opinions</u>

Plaintiff argues that the ALJ improperly evaluated certain opinions of consultative psychological examiner, Dr. Coleman. Pl. Br. at 6-11. In particular, Plaintiff relies upon Dr.

---

[8] The Commissioner suggests that the ALJ did not provide the detailed medical equivalence analysis required by SSR 19-4p, because SSR 17-2p allows an ALJ to provide a terse conclusion concerning medical equivalence, if the ALJ's later discussion of the evidence will reveal her reasons for her medical equivalence decision. Resp. at 7-8. There are two flaws with the Commissioner's argument. First, the ALJ never cited SSR 17-2p as the reason she provided a terse discussion of medical equivalence concerning Plaintiff's migraines. This court may not consider an explanation the ALJ does not rely upon. *Fargnoli*, 247 F.3d at 44 n.7. Second, the remainder of the ALJ's decision does not reveal the reason the ALJ failed to find that Plaintiff's migraine headaches did not medically equal the relevant listed impairment. Hence, the ALJ's decision did not comply with SSR 17-2p.

9

Coleman's opinions that Plaintiff had marked limitations in her ability to interact appropriately with the public, supervisors and co-workers, respond appropriately to usual work situations, and respond appropriately to changes in a routine work setting. Pl. Br. at 6 (citing R. 505). Plaintiff's argument lacks merit.

When an ALJ considers a medical source's opinions, she must explain how she considered the factors of supportability and consistency.[9] 20 C.F.R § 404.1520c(b)(2). Supportability refers to the objective medical evidence and supporting explanations the medical source provides for his opinions. § 404.1520c(c)(1). Consistency refers to how consistent the source's opinion is with other medical and nonmedical evidence in the record. § 404.1520c(c)(2). This regulation is consistent with the enabling statute. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

The ALJ explained that Dr. Coleman's opinions of marked limitations were not supported by his consultative examination, which indicated that Plaintiff's mental status was within normal limits, with intact attention and concentration, intact recent and remote memory skills, and good insight and judgment. R. 31 (citing Exhibit B11F at 4-5).[10] Furthermore, the ALJ found that Dr. Coleman's opinions of marked limitation were only partially consistent with the other evidence in the record. R. 31. The ALJ specifically found that evidence she had relied upon previously to conclude, at SEP step three, that Plaintiff had only mild limitation in two areas of mental functioning and moderate limitation in two other areas of mental functioning, was not consistent with Dr. Coleman's opinion that Plaintiff had marked limitations in certain areas of mental functioning. Hence, the ALJ found Dr. Coleman's opinions not fully persuasive. R. 31.

---

[9] The other relevant factors for evaluating a medical source's opinions are: the source's relationship to the claimant, the source's specialization, and other factors. 20 C.F.R. § 404.1520c(c)(3)-(5).
[10] Exhibit B11F contains Dr. Coleman's Mental Status Evaluation report and his Medical Source Statement of Ability to do Work-Related Activities (Mental). Exhibit B1F is contained at pages 499 to 510 of the administrative record.

The ALJ's analysis of Dr. Coleman's opinions that Plaintiff had marked limitations in her ability to interact appropriately with the public, supervisors and co-workers, respond appropriately to usual work situations, and respond appropriately to changes in a routine work setting properly considered the required factors of supportability and consistency. The ALJ explained why Dr. Coleman failed to adequately support his opinions and why they were not consistent with other evidence in the record, as required. Hence, there is no basis to find that the ALJ committed legal error when evaluating Dr. Coleman's opinions that Plaintiff had marked limitation is certain areas of mental functioning.

3. The ALJ's Mental RFC Assessment

Plaintiff initially asserts that the ALJ failed to identify substantial evidence to support the conclusion that she could understand, remember and carry out simple instructions. Pl. Br. at 11. However, she later concedes that this limitation is supported by the record; yet requirements of one of jobs the ALJ found she could perform, linen room attendant, exceed that ability. *Id.* at 13-14. She further argues that the remaining job, laboratory cleaner, numbered only 46,400 positions in the national economy, which is insufficient to constitute a significant number of jobs. *Id.* Plaintiff's argument lacks merit.

Contrary to Plaintiff's assertion, Pl. Br. at 14 n.2, there is Third Circuit authority on what number of jobs in the national economy constitute a significant number. The Third Circuit has held that as few as 200 jobs in the local economy is sufficient to determine that there are a significant number of jobs in the national economy. *Cragie v. Bowen*, 835 F. 2d 56, 58 (3d Cir. 1987). It is no longer customary for VEs to opine about the number of jobs in the local economy and they only testify about the number of jobs available in the national economy.[11] Nevertheless,

---

[11] Previously, VEs would testify about the number of jobs in both the local economy and the national economy. For the last decade, it has become customary to testify only about the number of jobs in the national economy.

since the Third Circuit has concluded that 200 local jobs are enough, this court has little difficulty in holding that 46,400 jobs in the national economy are sufficient. Hence, Plaintiff's assertion of error lacks merit.

      An implementing order and order of judgment follow.